Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000464
28-FEB-2018
07:58 AM

NO. CAAP-15-0000464

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


MOLOKAI SERVICES INCORPORATED,
a Hawai'i corporation, Plaintiff-Appellant, v.
PEARL A. HODGINS, FRIEL ENTERPRISES, INC.,
a Hawai'i corporation, PAULINE L. CASTANERA,
CORNWELL S. FRIEL, GERALDINE M. SHAH,
DOE DEFENDANTS 1-10, Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 14-1-0392(1))


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Chan, JJ.)

Plaintiff-Appellant Molokai Service's Inc. (**Molokai Services**) appeals from the June 10, 2015 Final Judgment (**Judgment**) entered by the Circuit Court of the Second Circuit (**Circuit Court**).[1]  The Circuit Court entered judgment against Molokai Services, and in favor of Defendants-Appellees Pearl Hodgins (**Hodgins**), Friel Enterprises, Inc. (**Friel Enterprises**), Pauline Castanera (**Castanera**), Cornwell Friel (**Friel**), and Geraldine Shah (**Shah**) (collectively, the **Defendants**), on all counts.  Molokai Services also challenges the Circuit Court's

---

[1]     The Honorable Rhonda I. L. Loo presided.

May 18, 2015 Order Granting Defendants' Motion to Dismiss Molokai Services First Amended Complaint (**Dismissal Order**), and September 16, 2015 Order Granting Defendants' Motion for Attorneys' Fees and Costs.

I.    BACKGROUND

    A.    The Dismissed Claims

        On March 2, 2015, Molokai Services filed its First Amended Complaint (**Complaint**), which included the following allegations:

        Molokai Services is a Hawai'i corporation, incorporated in 1963, doing business as the Molokai Drive Inn, a fast food establishment in Moloka'i.  Friel Enterprises was incorporated in Hawai'i in 1983.  Hodgins was the secretary, treasurer, and a director of Friel Enterprises since 1983.  Hodgins was also the secretary and treasurer of Molokai Services from 1982 until July 14, 2014, and a director of Molokai Services in 1994 and from 2008 through July 14, 2014.  Shah has been an officer and director of Friel Enterprises at all relevant times, and from 1989 through the filing of the Complaint.

        Pearl Friel Petro (**Petro**) was president and director of both Friel Enterprises and Molokai Services from 1982 to 2008, as well as a shareholder of Molokai Services.  Petro passed away on April 30, 2009.  Friel became a director of Molokai Services in 2008.  Castanera became a director of Molokai Services in 2011.  Friel and Castanera became officers and directors of Friel Enterprises in 2011.

2

The Complaint alleges that, on June 12, 1963, Molokai Services signed a thirty-year lease (**1963 Lease**) between Molokai Ranch, Ltd., as landlord, and Molokai Services, as tenant. The 1963 Lease provided for a rent of approximately $361.00 per quarter.

Hodgins allegedly was aware of and authorized all of Petro's actions and communications. In May 1983, Petro sent a letter dated August 27, 1982, and addressed it to the stockholders of Molokai Services, and to Molokai Services director and shareholder Elizabeth Medeiros (**Medeiros**). The letter stated in relevant part:

> 1. The Molokai Ranch has again offered to sell us our Drive Inn lot . . . as follows:
>
>    a. $160,000.00 on terms, 20% down, 5 year agreement of sale, 12% interest per annum payable yearly.
>    b. $136,000.00 cash payable by September 15, 1982.
>
>    If we do not respond by September 10, 1982 then it will be offered to anyone who is interested in purchasing a business lot.
>
> 2. If we do not purchase the area, our lease will be increased to $13,234.00 per year commencing in 1983 for the balance of the last 10 years of our lease. At present we are paying $386.00 per month which was the original amount twenty years ago. They did not increase our rent after the first ten years, even though there was such a clause in our lease.
>
> As you well know business has not been that good even though we have tried to offer the public various new menus. Molokai has been a very depressed area with about 20% unemployed. The future does not look very promising with increased labor and supply costs.

The Complaint alleges that Petro and Hodgins intentionally misrepresented the existing and proposed rent in the 1963 Lease, misrepresented the economic viability of Molokai Drive Inn, and provided insufficient notice to Molokai Services and its officers, directors, and shareholders, all for the purpose of depriving Molokai Services and its shareholders of the

corporate opportunity to purchase the leased property. This was allegedly done to set the stage for the Friel family members and Friel Enterprises to purchase the property, become the landlord of Molokai Services, and collect rent from Molokai Services, to the financial benefit of Friel Enterprises and to the detriment of Molokai Services.

A deed for the purchase of the leased property was recorded on July 22, 1983. Friel Enterprises purchased the property from Cooke Land Company, subject to the 1963 Lease. Petro and Hodgins then formed Friel Enterprises in August 1983.

The Complaint further alleges that, after the purchase of the property by Friel Enterprises, between 1983 and June 30, 1992, Petro and Hodgins conspired to increase Molokai Services's rent without Molokai Services's Board of Directors or shareholders' consideration or approval, in violation of the 1963 Lease. Petro and Hodgins are alleged to have, unlawfully and in a manner *ultra vires*, imposed rent increases upon Molokai Services and in favor of themselves and Friel Enterprises, in violation of their fiduciary duties.

The Annual Stockholders Meeting Minutes of March 19, 1988, allegedly contains the following relevant passages: "Pearl Petro - President. Discussion on the land lease - The lease runs through June 30, 1992. Options: (1) Negotiate a new long term lease (2) Sell the lease (3) Come up with a plan at a special meeting."

The minutes of the Annual Shareholders Meeting held on July 9, 1989, allegedly reflect the following:

> Our lease will expire on June 30, 1992 and we have to plan to continue or terminate our business. . . . The owners have decided to increase their rent to $1,500 per month, we are paying $950.00 now and you must realize that our present lease is a 30 year lease. Nothing is cheap today.
>
> Discussion on the Lease: Lease ends June 30, 1992. Shimizu made a motion to begin paying $1,500 on January 1, 1990 and negotiate for a new lease to start on July 1, 1992 for 10 years and an option for another 10 years. Medeiros seconded the motion. The president would negotiate the new land lease and report back to us.

The minutes of the Stockholders Annual Meeting held on January 21, 1991, allegedly contain the following:

> OLD BUSINESS: Discussion was shared by all that the renewal of our lease is most urgent. Pearl Petro will speak to the land owners on the amount that they would consider in order for us to renew our lease and the terms of the new lease agreement.

The President's Report by Petro, dated December 10, 1992, and recorded and ratified by Hodgins, reportedly stated:

> Our secretary will present the figures for our new lease which has to be approved by this board. Land with a building in Kaunakakai is very expensive and unavailable. There were two other offers on our present site, but the landlords felt they were obligated to us for the many years we have worked together.
>
> . . . .
>
> Looking ahead to the balance of 1992 and the year 1993, I do not think we will make as much profit as we have done in the past. The economy is down and additional competition on a small island where welfare is very prevalent makes business very difficult.

It is alleged that Petro and Hodgins fraudulently misrepresented to Molokai Services and its shareholders the economic health and viability of Molokai Services, and the unavailability of other properties to lease, in order to create reliance by Molokai Services and its shareholders, and to lull Molokai Services and its shareholders into accepting Petro's and Hodgins's recommendation to renew a lease with Friel Enterprises.

The Complaint alleges that a lease dated June 9, 1994, was entered into by Friel Enterprises, as landlord, and Molokai

Services, as tenant, for the period of July 1, 1992, through June 30, 2012 (the **1994 Lease**). The 1994 Lease was executed on behalf of Molokai Services by Petro, Hodgins and Nobu Shimizu (**Shimizu**). The lease was executed on behalf of Friel Enterprises by Petro and Hodgins. At the time of the execution of the 1994 Lease, Petro was president and director of both Friel Enterprises and Molokai Services, and Hodgins was secretary, treasurer, and a director of both Friel Enterprises and Molokai Services.

The 1994 Lease allegedly was executed for the financial benefit of Friel Enterprises and to the extreme detriment of Molokai Services. It is alleged that the execution of the 1994 Lease was a breach of fiduciary duties and constituted self-dealing.

It is alleged that no negotiations on the lease terms were held prior to the 1994 Lease's execution and that the 1994 Lease was drafted by Friel Enterprises and accepted without question by Petro and Hodgins. It is further alleged that the proposed lease terms were never presented to the Molokai Services shareholders for review prior to the execution of the 1994 Lease and that Petro and Hodgins intended that the 1994 Lease terms be grossly excessive and unconscionably favorable to Friel Enterprises, with the goal of siphoning out and converting Molokai Services funds to Friel Enterprises, Friel, Castanera, and Shah.

The 1994 Lease was for a period of twenty years. For the first ten years of the lease, Molokai Services had to pay $2,500.00 per month in rent, 5% of its gross sales, and the

amount of "gross income taxes payable by the Lessor under the Hawaii General Excise Tax Law." The Complaint alleges that the standard industry practice on Moloka'i for commercial food service establishment lease rents is significantly less than $2,500.00 per month, and does not include a gross sales percentage increase or the payment of the "Gross Excise Tax" to a landlord.

The Complaint alleges that there were no negotiations between Molokai Services and Friel Enterprises for the second ten-year period for the 1994 Lease at any Executive Board or Annual Shareholder's Meeting, prior to the expiration of the first ten-year period on June 30, 2002. In 2004, Petro and Hodgins, allegedly, unilaterally raised Molokai Services base rent to $3,000 per month plus 6% of gross sales in breach of the 1994 Lease terms (as it was already two years into the second ten-year term), without Molokai Services Board or shareholders' approval, without fair and full disclosure to the Molokai Services Board and shareholders that the lease terms exceeded fair market value, and in violation of Petro's and Hodgins's fiduciary duties to Molokai Services.

It is alleged that, at the Annual Shareholders Meeting, on October 30, 2004, Petro and Hodgins misrepresented to the Molokai Services directors that the lease rent was a "renegotiated percentage rent from 5% to 6% for 7 more years beginning July 1, 2004. Basic rent went up from $500 from $2,500 to $3,000." This is alleged to have falsely conveyed that the purported "renegotiation" had been conducted properly, with

authorization by the full Board or shareholders, and in the best interest of Molokai Services.

The Complaint alleges that Friel and Castanera benefitted financially from the funds siphoned from Molokai Services through the excessive lease payments and that, since their nomination as directors to Molokai Services, neither Friel or Castanera has exercised their fiduciary duties to Molokai Services regarding to the lease payments to Friel Enterprises.

From 2011, Molokai Services's directors and shareholders (excluding Hodgins, Friel, Castanera, and Shah) purportedly sought to negotiate lease terms with Friel Enterprises. It is alleged that Hodgins, Friel, and Castanera, despite being directors of Molokai Services, fraudulently resisted and delayed discussions regarding the lease terms, in contravention of their fiduciary obligations to Molokai Services, and continued to do so through the filing of the Complaint.

The Complaint alleges that the purportedly fraudulent, self-dealing lease terms are part of a continuing and ongoing pattern and practice of fraud, bad faith, breach of fiduciary duties, breach of contracts, and unjust enrichment, by all Defendants. The Complaint includes eight counts, as follows: breach of fiduciary duties; breach of contract; conversion; fraud and misrepresentation; aiding and abetting and participating in breach of fiduciary duty; unjust enrichment; declaratory relief; and injunctive relief.

B.    The Motion to Dismiss

On March 30, 2015, the Defendants filed a Motion to Dismiss Molokai Services's First Amended Complaint, arguing that all claims are barred by the applicable statute of limitations of six years.  Defendants also argued, *inter alia*, that the "continuing tort exception" to the statute of limitations does not apply because the acceptance of rent by Friel Enterprises did not constitute a "continuing tort."

On April 15, 2015, Molokai Services filed a memorandum in opposition, contending that Defendants had a continuing fiduciary obligation for the entire time they were officers or directors of Molokai Services and that each of the Defendants had an affirmative fiduciary obligation to rectify the fraud, and not to benefit from it.  Molokai Services further contended that, from June 1994 through October 2014, Friel Enterprises fraudulently converted funds to its use through the 1994 Lease. Molokai Services contended that Defendants' continuing diversion of Molokai Services's funds constitutes both a continuing injury and continuing tortious act.  Molokai Services argued that the 2012 extension of the 1994 Lease terms was an additional "separate tortious act" that was "in violation of Defendants' fiduciary obligations."

In reply, Defendants argued that the receipt of rents was based on an agreement reached years earlier, Molokai Services knew about the terms of the lease, as well as the Defendants' alleged conflict of interest, and Molokai Services took no action for roughly twenty years.  Defendants asserted that Friel

Enterprises's acceptance of rent is neither a breach of fiduciary duty nor conversion and does not toll the statute of limitations. Defendants also contended that the Complaint does not contain any allegation regarding the extension of the Lease in 2012, and even if it had been pled, the allegation would fail to state a cause of action because Friel Enterprises had no duty to extend or negotiate any further lease terms with Molokai Services.

After an April 23, 2015 hearing, the Circuit Court granted Defendants' motion to dismiss, on the grounds that the maximum statute of limitations was six years and that all of the allegedly wrongful acts occurred more than six years prior to the filing of the original complaint. In the May 18, 2015 Dismissal Order, the Circuit Court further stated, in relevant part:

> As an initial matter, the Court finds that the maximum statute of limitations for all of these claims asserted by Plaintiff is six years. Plaintiff's original Complaint was filed on June 27, 2014. In that regard, the Court finds the wrongful acts upon which Plaintiff's claims are based occurred before June 27, 2008, or at least six years prior to the filing of the original Complaint.
>
> . . . .
>
> Having reviewed the record, the Court notes that [Molokai Services] does not seem to dispute that it knew A) that Friel Enterprises, Inc. purchased the land upon which the Molokai Drive Inn sits, back in 1983; B) that some individuals were directors or officers of both [Molokai Services] and Friel Enterprises, Inc.; and C) that [Molokai Services] was aware of the terms of the lease entered into in 1994, the recomputation in 1998, and in the renegotiation of the lease sometime between 2002 and 2004.
>
> With regards to the Continuing Tort Doctrine and whether it applies under these circumstances to toll the statute of limitations, as explained by the Intermediate Court of Appeals in the case of Anderson v. State, 88 Hawai'i 241, 965 P.2d 783 (App. 1998), a continuing tort is a tortious act that occurs so repeatedly that it can be termed continuance [sic], such that one may say that the tortious conduct has not yet ceased. Accordingly, the statute of limitations cannot run because the tortious conduct is on-going.
>
> In the Court's view, Plaintiff did not allege the type of conduct that the Continuing Tort exception is intended to

> encompass. Although Plaintiff suggests that the diverted water that caused property damage in <u>Anderson</u> is analogous to the funds being diverted from [Molokai Services] to Friel Enterprises, Inc., the Court finds the circumstances alleged in the Complaint are factually distinguishable from prior Hawaii cases. What we have here, more closely, is a series of separate and distinguishable acts that have been alleged throughout the numerous paragraphs of the Complaint.
>
> Accordingly, it appears beyond a doubt that Plaintiff can prove no set of facts entitling it to relief. As such, the Court grants Defendants' Motion to Dismiss the First Amended Complaint <u>with</u> prejudice, for failure to state a claim upon which relief can be granted. . . .
>
> Further, the Court denies [Molokai Services] oral motion for leave to amend its First Amended Complaint.

The Judgment was entered on June 10, 2015. The Notice of Appeal was filed on June 15, 2015. Defendants' Motion for Attorneys' Fees and Costs was filed on June 19, 2015, and granted in an order entered on September 16, 2015.

II. POINTS OF ERROR

Molokai Services raises six points of error, contending that the Circuit Court erred in: (1) concluding that Molokai Services did not allege the type of conduct that the continuing tort doctrine is intended to encompass; (2) finding that the wrongful acts upon which Molokai Services's claims are based occurred at least six years prior to the filing of the original complaint; (3) stating that it did not view the act of accepting voluntarily-paid rent equivalent to a conversion or a breach of fiduciary duty; (4) determining that it appears beyond a doubt that Plaintiff can prove no set of facts entitling it to relief; (5) denying Molokai Services's oral motion to amend its First Amended Complaint; and (6) awarding attorneys' fees and costs to the Defendants.

III. APPLICABLE STANDARDS OF REVIEW

> A circuit court's ruling on a motion to dismiss is reviewed *de novo*. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. This court must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory. For this reason, in reviewing a circuit court's order dismissing a complaint . . . this court's consideration is strictly limited to the allegations of the complaint, and this court must deem those allegations to be true.

Cnty. of Kaua'i ex rel. Nakazawa v. Baptiste, 115 Hawai'i 15, 24, 165 P.3d 916, 925 (2007) (citations and brackets omitted; format altered).

> [The appellate] court reviews a denial of leave to amend a complaint under HRCP Rule 15(a) or (b) under the abuse of discretion standard. The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Stated differently, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008) (citations omitted; format altered).

"The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard." Sierra Club v. Dep't of Transp., 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (citations, internal quotation marks, and brackets omitted).

IV. DISCUSSION

Under Hawai'i Rules of Civil Procedure (**HRCP**) Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."

> [I]n weighing the allegations of the complaint as against a motion to dismiss, the court is not required to accept conclusory allegations on the legal effect of the events alleged. While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact).

Pavsek v. Sandvold, 127 Hawaiʻi 390, 403, 279 P.3d 55, 68 (App. 2012) (citations and quotations marks omitted, format altered).

Hawaii Revised Statutes (HRS) § 657-1 (2016) states, in relevant part:

§ 657-1 Six years. The following actions shall be commenced within six years next after the cause of action accrued, and not after:

(1)     Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court; . . .

. . . .

(3)     Actions for taking or detaining any goods or chattels, including actions in the nature of replevin; and

(4)     Personal actions of any nature whatsoever not specifically covered by the laws of the State.

Molokai Services initially filed a complaint in this case on June 27, 2014. "[A] claim accrues when the plaintiff knew or should have known that an actionable wrong has been committed." Garner v. State, 122 Hawaiʻi 150, 168, 223 P.3d 215, 233 (App. 2009). It is undisputed that the statute of limitations for all of the claims asserted by Molokai Services is six years. Thus, as there is no allegation that Molokai Services could not have reasonably discovered the allegedly wrongful nature of the Defendants' conduct at an earlier date, it appears that the statute of limitations bars all claims that accrued prior to June 27, 2008. The Circuit Court dismissed all claims

13

on the grounds that they accrued at least six years prior to expiration of the statute of limitations.

C.    Breach of Fiduciary Duty

"To claim breach of fiduciary duty, a plaintiff must show that a fiduciary relationship existed between the parties, the defendant breached a fiduciary duty to the plaintiff, and the breach proximately caused injury to the plaintiff." Swift v. Swift, No. CAAP-13-0000101, 2016 WL 3573970, at *3 (Haw. App. June 30, 2016) (mem.) (citing 37 C.J.S. Fraud § 15 (2012); Cochrane v. Azman, No. 29562, 2011 WL 661714, at *5 (Haw. App. Feb. 22, 2011) (mem.)). "The relation of directors to corporations is a fiduciary one and the well-established rule both in Hawaii and in a majority of the States is that when fiduciaries deal with themselves relative to their trust property the burden is upon such fiduciaries to establish the fairness of the transaction." Lum v. Kwong, 39 Haw. 532, 538 (1952) (citation omitted). "The principle applies to leases as well as to other corporate transactions." Id. at 540 (citation omitted).

A fiduciary's duties to the corporation "include undivided, unselfish and unqualified loyalty, unceasing effort never to profit personally at corporate expense, and unbending disavowal of any opportunity which would permit the director's private interests to clash with those of his corporation." Lussier v. Mau-Van Dev., Inc., 4 Haw. App. 359, 381, 667 P.2d 804, 819-20 (1983) (citation omitted). A fiduciary "will not be permitted to make a private or secret profit" out of the fiduciary's official position. Id. at 381, 667 P.2d at 820

(citation omitted). "Generally it is held that a director will not be permitted to receive and retain a commission or other secret profit or advantage in the case of a sale or lease o[f] property by or to the corporation." Hawaiian Int'l Finances, Inc. v. Pablo, 53 Haw. 149, 153, 488 P.2d 1172, 1174 (1971). "Unless otherwise agreed, an agent who makes a profit in connection with transactions conducted by him on behalf of his principal is under a duty to turn over such profits to his principal." Id. at 152, 488 P.2d at 1174 (citation omitted).

Molokai Services contends, inter alia, that the Complaint alleged a breach of fiduciary duty claim by asserting that: (1) Petro and Hodgins intended that the 1994 Lease be unfair to Molokai Services; (2) neither Friel nor Castanera has exercised their fiduciary duties with regard to rent payments; (3) Hodgins, Friel, and Castanera delayed discussions regarding the Lease terms; and (4) the Defendants had a fiduciary duty to rectify the fraud, and not to benefit from it. The Complaint also alleges that Hodgins, Castanera, and Friel were directors of Molokai Services. Taking this allegation as true (and it appears to be undisputed), Hodgins, Castanera, and Friel each owed a fiduciary duty to Molokai Services. See Lum, 39 Haw. at 538. The Defendants respond, however, that a director or officer does not owe a duty to go back in time and undo an allegedly unfair contract, and that mere acceptance of rent is not a breach of fiduciary duty.

We reject Defendants' characterization of Molokai Services's breach of fiduciary duty claims. We also reject

Defendants' related argument that Molokai Services's breach of fiduciary claim is entirely barred because the alleged initial breach occurred outside the statute of limitations and the continuing tort doctrine is inapplicable, as a matter of law. A "continuing tort" is "a tortious act that occurs so repeatedly that it can be termed 'continuous,' such that one may say that the tortious conduct has not yet ceased. Accordingly, the statute of limitations cannot run, because the tortious conduct is ongoing." Anderson v. State, 88 Hawai'i 241, 248, 965 P.2d 783, 790 (App. 1998). More specifically, a continuing tort is

> one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation, and for there to be a continuing tort there must be a continuing duty.

Id. at 247, 965 P.2d at 789 (quoting 54 C.J.S. Limitations of Actions § 177 (1987)).

The continuing tort doctrine "recognizes that though the statute of limitations is tolled by a continuing tortious act, in such a case, a recovery may be had for all damages accruing within the statutory period before the action, although not for damages accrued before that period." Id. at 250, 965 P.2d at 792 (citations, quotation marks, and brackets omitted). Hawai'i case law developing the continuing tort doctrine arose in other contexts. See, e.g., Wong Nin v. City & Cty. of Honolulu, 33 Haw. 379, 386 (1935) (arising out of diversion of waters, depriving landowner of necessary irrigation); Anderson, 88 Hawai'i at 242-44, 965 P.2d at 784-86 (alleging that the State wrongfully diverted stream onto plaintiff's property). However,

other jurisdictions have applied the continuing tort doctrine to breaches of fiduciary duty involving periodic payments, similar to Molokai Services's allegations here.  See, e.g., Butler v. Gibbons, 569 N.Y.S.2d 722 (N.Y. App. Div. 1991) (defendant allegedly breached fiduciary duty by collecting rents but not accounting to partner for share of proceeds); Marzec v. Nye, 690 S.E.2d 537, 542 (N.C. Ct. App. 2010) (cause of action for breach of fiduciary duty for failure to pay salary to other shareholder, while continuing to pay himself and failing to provide an accounting, accrued each time defendant failed to pay, for the period within the statute of limitations).  While not all courts are in accord, we conclude that this application of the continuing tort doctrine to alleged breaches of fiduciary duty is most consonant with other Hawaiʻi jurisprudence.  See, e.g., Garner, 122 Hawaiʻi at 169, 223 P.3d at 234; but see Thorndike v. Thorndike, 910 A.2d 1224, 1225 (N.H. 2006) (rejecting the application of the continuing tort doctrine to a claim for breach of fiduciary duty by freeze-out of brother from business).

Nevertheless, with respect to the claim that Hodgins knew and intended the 1994 Lease to be unfair, it appears that a cause of action for breach of fiduciary duty based the act of entering into the 1994 Lease is time barred to the extent that the allegedly excessive payments were made outside the six-year statute of limitations.

However, the Complaint further alleges that from 2011, Molokai Services directors (excluding Hodgins, Friel, Castanera, and Shah) sought to negotiate lease terms with Friel Enterprises,

but that Hodgins, Friel, and Castanera resisted and delayed discussions regarding the lease terms, in furtherance of their own interests and to the detriment of Molokai Services. Thus, the Complaint sufficiently alleged a claim that the Defendants violated their duties of "undivided, unselfish and unqualified loyalty" and "unbending disavowal of any opportunity to permit [their] private interests to clash with those of" Molokai Services. See Lussier, 4 Haw. App. at 381, 667 P.2d at 819-20.

In addition, for the reasons stated above, it appears that the Complaint also sufficiently pled a claim for breach of fiduciary duty each time that, within the statute of limitations period, the individual director-defendants allegedly collected excess rent from Molokai Services, retained a profit, and failed to account for such profit to Molokai Services. Molokai Services sufficiently stated a claim that Hodgins, Castanera, and Friel violated their fiduciary duty to "never profit personally" at Molokai Services's expense. Id. Even if certain profits were allegedly taken outside the statute of limitations period, thereby limiting the extent of Molokai Services's claims for recovery, those defendants were not thereafter forever permitted to receive and retain a secret profit in the lease of the property to Molokai Services. Although Molokai Services has the burden to prove its claims of a breach, and it is premature to further discuss such proof and/or defenses that might be established, Molokai Services sufficiently alleged that the director-defendants had a continuing fiduciary duty to turn over wrongfully obtained profits. See Pablo, 53 Haw. at 152-53, 488

18

P.2d at 1174. We therefore conclude that the Circuit Court erred when it dismissed Molokai Services's claim of breach of fiduciary duty in its entirety. See Baptiste, 115 Hawai'i at 24, 165 P.3d at 925.

D.    Conversion

"Conversion encompasses the following acts: '(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand.'" Freddy Nobriga Enterprises, Inc. v. State, Dep't of Hawaiian Home Lands, 129 Hawai'i 123, 129, 295 P.3d 993, 999 (App. 2013) (quoting Tsuru v. Bayer, 25 Haw. 693, 696 (1920)). Molokai Services contends that each monthly receipt of the excess rent by Friel Enterprises was a fraudulent conversion of funds. The Defendants argue that they did not take the rent from Molokai Services without its consent, Friel Enterprises's acceptance of the rent payments based on the 1994 Lease terms does not constitute an "unwarranted assumption of ownership," and the acceptance of a contractual benefit is not a continuing tort.

Upon review, it does not appear that the Complaint alleges, inter alia, that Friel Enterprises took rents without Molokai Services's consent. Nor does it allege that taking rents constituted an unwarranted assumption of ownership of Molokai Services's property. Indeed, Molokai Services cites no authority to support their theory that acceptance of voluntarily paid rents can satisfy the elements of conversion. In addition, the Complaint does not sufficiently allege that the individual

defendants took property from Molokai Services without its consent, wrongfully assumed ownership of such property, or wrongfully detained Molokai Services's property after demand. Accordingly, we conclude that the Circuit Court did not err in dismissing Molokai Services's claim for conversion.

E.    Aiding and Abetting a Breach of Fiduciary Duty

"A claim for aiding and abetting a breach of fiduciary duty requires:  (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." Combs v. Case Bigelow & Lombardi, No. 28773, 2010 WL 370275, at *8 (Haw. App. Jan. 27, 2010) (mem.) (quoting Kaufman v. Cohen, 760 N.Y.S.2d 157, 169 (N.Y. App. Div. 2003)). Molokai Services contends that the directors of Friel Enterprises, including Shah, knowingly participated in Hodgins's continuing violation of fiduciary duties, and that any actions by the Defendants in furtherance of the violations of fiduciary duties would be a continuing tortious act.  The Defendants contend that because "Molokai Services' underlying breach of fiduciary duty claim is barred by the statute of limitations, so too is its claim for aiding and abetting."

As discussed above, the Complaint sufficiently pled a claim that Hodgins breached a fiduciary duty to Molokai Services. The Complaint alleged that non-fiduciary defendants knew of the fiduciary relationship of Hodgins, and approved, assisted, and encouraged the breaches of fiduciary duties.  We would therefore conclude that the Circuit Court erred in dismissing Molokai

Services's claim for aiding and abetting a breach of fiduciary duty.

F.     Breach of Contract

Molokai Services contends that the breach of contract "commenced in 2004 when the 1994 Lease rent was fraudulently increased, in specific breach of the 1994 Lease terms," and that the continuing obligation doctrine would extend the action to either the end of the 1994 Lease in 2012 or the end of the extension of the 1994 Lease in 2015.  The Defendants contend that the continuing obligation doctrine is inapplicable because Molokai Services fails to identify any term of the contract that was continually breached.  The Defendants' argument is well-founded.  Molokai Services does not identify the contractual provision under the 1994 Lease that imposed a continuing duty on the Defendants, and how that continuing duty was breached.  We would therefore conclude that the Circuit Court did not err in dismissing Molokai Services's breach of contract claim.

G.     Fraud/Unjust Enrichment

Molokai Services pled claims of fraud and unjust enrichment, independent of its breach of fiduciary duty claim (although such claims appear to be based on the same underlying factual allegations).  The Circuit Court dismissed all claims. Molokai Services makes no argument on appeal that the Circuit Court erred in dismissing the fraud and unjust enrichment claims, and provides no applicable law regarding those claims.  We therefore conclude that Molokai Services waived its independent claims of fraud and unjust enrichment.  See Hawai'i Rules of

Appellate Procedure Rule 28(b)(7); <u>Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel</u>, 113 Hawai'i 251, 280 n.20., 151 P.3d 732, 761 n.20 (2007) ("Inasmuch as KRC and KHALP fail to address their unfair methods of competition claims against the Lawyers on appeal, it appears that such claims have been abandoned. Thus, KRC's and KHALP's claim of unfair methods of competition against the Lawyers is deemed waived.").

H.  <u>Motion to Amend</u>

At the conclusion of the hearing on Defendants' motion to dismiss the Complaint, counsel for Molokai Services asked the court, "Your honor, is it possible for us to have leave to amend the complaint?" The Circuit Court responded, "Not after I dismissed it." No other reasons, such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility, were referenced by the Circuit Court. <u>See</u>, <u>e.g.</u>, <u>Dejetley v. Kaho'ohalahala</u>, 122 Hawai'i 251, 270, 226 P.3d 421, 440 (2010) (discussing motions to amend under HRCP Rule 15). In light of our conclusion that the Circuit Court erred in dismissing Molokai Services's Complaint in its entirety, it appears that the Circuit Court based its denial of the request to amend on a wrong view of the law. We therefore conclude that the Circuit Court erred in denying leave to amend on this ground. On remand, Molokai Services may file a written motion for leave to amend, which shall then be considered in accordance with HRCP Rule 15(a) and applicable case law.

I.    Attorneys' Fees

In light of our conclusion that the Circuit Court erred in dismissing the Complaint, we vacate the Circuit Court's order awarding Defendants' attorneys' fees and costs, without prejudice to a renewed request upon conclusion of further proceedings on remand.

V.    CONCLUSION

As set forth above, the Circuit Court's June 10, 2015 Judgment is affirmed in part and vacated in part; this case is remanded to the Circuit Court for proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, February 28, 2018.

On the briefs:

Bruce F. Sherman,
for Plaintiff-Appellant.

Jonathan H. Steiner,
Jesse J.T. Smith,
Kurt W. Klein,
(McCorriston Miller Mukai
 MacKinnon LLP),
for Defendants-Appellees.

Presiding Judge

Associate Judge

Associate Judge